THOMAS E. BLANCHARD AND LAWRENCE M. BURRUS, APPELLANTS, vs. RAINES' EXECUTRIX, APPELLEE.

1. The act of March 11, 1879, Chapter 3131, and the act of February 22, 1881, Chapter 3247, providing a summary proceeding by warrant of distress for securing the rents due to and the advances made by the landlord or at his request, by which the property liable to seizure is levied upon without personal notice to the tenant, is not in conflict with the constitutional provisions which secure the right of trial by jury, and declare that no person shall be deprived of property without due process of law. The acts provide that the tenant may have the matters in dispute tried by a jury on replevying the property and tendering an issue.

2. The forms of administering justice and the powers of the courts are subjects of legislative control.

3. Where a proceeding is substantially a proceeding *in rem*. a seizure of property in the possession of the owner for the enforcement of a lien upon it, is held to be sufficient notice to the owner, if no other notice is required by the statute.

4. The statute giving a lien and remedy to the landlord for rent and advances enters into and forms part of the agreement for leasing.

5. The provision of the Constitution that "the right of trial by jury shall remain inviolate" does not confer a right to a jury trial where the right did not before exist, but secures the right against abridgment in cases where it existed prior to the adoption of the Constitution. There is no infringement so long as the right is not directly or indirectly denied.

6. A note promising to pay a sum of money for rent of land to which is appended a stipulation that if this note and another for the same amount shall be promptly paid when due the payee shall make title to the land to the maker of the notes, otherwise the amount to be deemed as rent only is but a promise to pay rent, which may become purchase money upon full compliance by the lessee.

7. The landlord's lien for rent and for advances as provided by the acts of 1879 and 1881 may be enforced by a single distress warrant, covering both claims ; the claim for advances being a lien upon the crop only while the lien for rent may be satisfied out of the crop and other property kept on the premises.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion.

*Liddon & Carter* for Appellants.

*J. F. McClellan* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

Distress for rent, &c. This case arises under Chapter 3131, Act of March 11, 1879, and Chapter 3247, Act of February 22, 1881. Section 1 of ch. 3131, declares that all claims for rent shall be a lien on agricultural products raised on the land rented, and on all other property of the lessee kept on the premises. The second section provides that if any person to whom any rent may be due, his agent or attorney, shall make affidavit before the Clerk of the Circuit Court of the county in which the land rented lies, stating the amount or quality and value of the rent due for

such land, it shall be the duty of the Clerk to issue a distress warrant, directed to the Sheriff, commanding him to levy on the property of the defendant, or that may be liable for rent, and collect the rent claimed in the affidavit, or the value thereof. The officer receiving such warrant shall immediately levy on sufficient of the property liable to the rent claim to pay the rent due, and interest and costs. By section three " the party distrained shall have the right to replevy the property so taken, by making oath that the rent, or any part therof, claimed, is not due, and giving bond with good and sufficient sureties, conditioned for the payment of the amount or value of the rent which upon the trial may be found to be due," &c. The fourth section provides that in case the property levied on shall be replevied, it shall be the duty of the officer to return all the papers to the clerk, and a jury shall be sworn to try the issue, without other pleadings, and in case of a verdict for the plaintiff, judgment shall be rendered for the amount or value of the rental, with interest and costs, and execution shall issue thereon, as in other cases; and a right of appeal is given. Section five provides that if the property is not replevied within ten days it may be sold, and the proceeds applied to the payment of rent and costs, the property to be advertised ten days, in the manner provided by law in cases of sale on execution. By section eight, the proceedings may be had as against the lessee, his executor or assigns.

By Chapter 3247 it is provided that landlords shall have a lien on the crop grown on land rented for the rent of the current year, and for advances made in money or other things of value, whether made directly by them or at their instance and request by another person, or for which they have assumed the legal responsibility, at or before the time at which such advances were made, for the sustenance and

well-being of the tenant and his family, for preparing the ground for cultivation, or for cultivating, gathering, saving, handling or preparing the crop for market. Further, that the liens created by the above section may be enforced in the same manner and by the remedies provided by Chapter 3131, above mentioned.

The agent of Blanchard & Burrus made oath before the Clerk of the Circuit Court for Jackson county, that Susan Robinson, executrix, &c., of W. S. Raines, was indebted to them in the sum of two hundred dollars for rent, for 1883, of certain described lands, payable in money, and actually due. Also that said executrix is also indebted to the firm of Liddon & Co., for advances made by Liddon & Co., to said W. S. Raines in his life time, and to said Susan Robinson as his executrix since his death, of goods, &c., advanced by Liddon & Co., at the instance of Blanchard & Burrus, for the sustenance of said Raines, and for cultivating, gathering, saving, handling and preparing for market, the crop raised on the lands mentioned, during the current year, to the amount of $142.55, which is due and unpaid.

Annexed to the affidavit is a paper reading as follows:

"$200. Jackson county, Fla., Dec. 26, 1882. On Oct. 1st, 1883, I promise to pay Blanchard & Burrus or order two hundred dollars for rent for 1883, of 154.15 acres of land in said county, to wit: Lots 6 and 7 in section 20, township 5, range 7, north and west. If this note is promptly paid when due, and I also pay another note for same amount on October 1st, 1884, then they are to make me titles to said land; otherwise, on failure to pay promptly, all payments to go for rent only, and land still to remain property of said Blanchard & Burrus. Witness my hand and seal.

"W. S. RAINES. [L. S.]

"Witness, C. C. LIDDON."

On filing this affidavit the clerk issued a distress warrant

under the seal of the Circuit Court, directing the sheriff to levy upon and take possession of the property of the said Susan Robinson, as executrix, &c., of Raines, that may be liable for rent and advances claimed, and collect, &c. The sheriff levied upon certain cotton and horses as liable for the rent.

Susan Robinson filed her affidavit denying that she is the executrix, &c., and denying the indebtedness as claimed. She also gave a replevin bond, and the property was released by the sheriff

At the ensuing term of the Circuit Court the said Susan Robinson made a motion to quash the writ of distress upon the following grounds:

1. That the affidavit upon which it issued is insufficient. 2. The amount claimed to be due, upon which the writ of distress issued, is not for rent or advances contemplated by the statute. 3. The writ is void because it is not made returnable to rule day, and because it does not require any one to be served with the writ.

The court granted the motion and dismissed the case. From this judgment claimants appeal.

1. The affidavit is sufficient under the terms of the act. It asserts that an amount of money is due for rent to the claimants as landlords, for the year then current, from the executrix, as such, and describes the land. This is sufficient as to the rent. The affidavit also states that there is due and unpaid an account for goods, &c., furnished to Raines and to the executrix for sustenance, and for making and gathering crops on the land, to the amount of $142.55, by Liddon & Co., at the instance of Blanchard & Burrus. These statements are made in the precise language of the statute. We see no objection to joining the two matters of rent and supplies, as the proceedings are controlled by the same rules, and are in behalf of and for the protection of

Blanchard & Burrus, as landlords, at whose instance, it is stated, the supplies were furnished by Liddon & Co. Blanchard & Burrus are the parties claiming the liens, both for rent and supplies. The tenant, however, may require that the claim for the advances shall be satisfied out of the crops only; while the claim for rent is a lien upon the crops, and also on other property of the tenant, kept on the premises.

2. The second ground is equally untenable. It is argued that the note appended to the affidavit and the contract embodied in it, show that the money named is purchase-money, and not rent. The note, however, expressly names the $200 as rent for 1883, and mentions another note of $200 due in 1884, and says that if both notes are promptly paid when due, then Blanchard & Burrus " are to make me titles to said land," but if not so paid promptly, then "all payments to go for rent only." And so, by the terms and intent of the contract, all payments were to be accounted as rent unless the payments were promptly made. It does not change the character of the agreement to pay rent, that the tenant may at the end of the time claim a conveyance of the land, having made prompt payment of the notes as per contract.

3. The third ground embraces two propositions, the first of which is that the writ was not returnable to a rule day. To this it is only necessary to remark that a distress warrant is not a process by which a suit is commenced, within the meaning or the practice acts. It is a special proceeding, devised by law for the enforcement of a specific statutory lien upon the crops and other property on the premises, for rent and supplies furnished by the landlord or upon his credit, for the benefit of the tenant. No " rule day " is contemplated by the statute, and it would be inconsistent with the summary character of the proceeding.

The remaining proposition is that the proceeding is void because " no notice is required to be served with the writ." The statute does not require personal notice or publication, and it is insisted that for this reason it is inoperative to authorize this summary process, because it condemns without a trial by jury, and deprives the owner of his property without due process of law ; all which is said to be in conflict with the third and eighth sections of the Bill of Rights of the Constitution of the State, and the 14th Amendment of the Constitution of the United States.

It is said that this court, in the case of Flint River Steamboat Company vs. Roberts, 2 Fla., 102, has decided the very question against the validity of the act. That case arose out of proceedings under an act of the Legislature approved January 4, 1847, found in Thomp. Dig., 414, which provided that persons furnishing labor or materials to any water craft navigating the Apalachicola river, might make an affidavit of the amount due for labor or materials before the Circuit Judge, whereupon the Judge shall order the Clerk of the Court to enter up judgment for the amount so sworn to, and the clerk was required forthwith to issue an execution against the owner of the boat, and the sheriff was required to seize the boat and advertise it for sale. No notice to the owner was required to be given before judgment or seizure, and no notice at any time other than the seizure by the sheriff and advertising for sale. There was a provision that the owner might deny and contest the claim, and obtain release of the property by giving bond, after which the execution shall be returned into court with the other papers, and the issue tried by a jury. The court held in that case that the judgment was unwarranted, and the statute authorizing it void, because it did not provide for summons, notice or appearance, or a jury trial, *before judgment.* In Georgia a like

statute was upheld, on the ground that a right of trial by jury was given to the owner, if he chose to avail himself of it; and though the remedy provided might be inconvenient, yet all the rights of parties were protected by means provided by the statute. Flint River Steamboat Co. vs. Foster, 5 Ga., 194, Lumpkin, J.

The proceeding by warrant of distress for rent of land is of very ancient origin, and notice before seizure was unnecessary. Addison on Torts, Dudley & Baylies' Ed., 662. In Tancred vs. Leyland, 16 Ad. & E., N. s., 669, 680, it was argued that the common law casts a duty on the landlord distraining to inform the tenant what is the arrear of rent for which he distrains. Parke, B., for the court says: "We think that the common law casts no such obligation on the distrainor. It has been expressly laid down that if the lord distrain for rents or services he has no occasion to give notice to the tenant for what thing he distrains; for the tenant, by intendment, knows what things are in arrear for his lands, (1 Rol. Abr., 674); and the authority for this is Year B. Parch., 453, E. 3, when Lord Chief-Justice Fyncheden, in answer to the argument that the lord, on the taking of a distress, ought to give notice to the tenant of the cause of the taking, says it is not so, for the tenant is always held by common intendment, to know what things are in arrear from his land, as rent and service, &c. This was adopted by Lord Ch. B. Gilbert."

The landlord could distrain in his own name, or employ a bailiff or servant to distrain for him. And the effect of it is to compel the tenant either to replevy the distress and contest the taking, in an action against the distrainor, or to compound or pay the debt or duty. Tomlin's Law Dict., tit. *Distress.*

Our statute adopts the common law right of distress for rent, but requires the landlord to make oath to the amount

due. It has further provided that the landlord shall have a like lien upon crops for the price or value of supplies and advances made by him, or under his order, to the tenant, to enable him to make and harvest his crops. The contract of leasing is made under these conditions imposed by the statute, and of course the statute enters into and forms part of the contract, regulating and limiting the rights and duties of each party. This statute, as before remarked, makes the rent and advances a specific lien upon the property mentioned, and thereby the landlord has a right of property in the crops, &c., which he is by the act authorized to foreclose by seizure and sale in the manner prescribed.

As to the question of notice, it is true that a statute which should authorize a debt or damages to be adjudged against a person upon purely *ex parte* proceedings, without a pretense of notice, or any provision for defending, would be a violation of the Constitution, and void; yet where the Legislature has prescribed a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend, the courts should not pronounce the proceeding illegal. Matter of Empire City Bank, 18 N. Y., 200, 215.

In many of the States, under their statutes, the practice of foreclosing mortgages of real or personal property by advertising the property for sale, and without other notice than notice of sale, has prevailed, and titles under such sales have been sustained, the statute authorizing it being part of the contract of mortgage or pledge. 18 N. Y., 215; Flint R. St. Co. vs. Foster, 5 Geo., 194, 204. In Pennoyer vs. Neff, 95 U. S., 714, 727, Field, J., delivering the opinion of the court, says: " The law assumes that property is always in the possession of its owner, in person or by agent,

and it proceeds upon the theory that its seizure will inform him not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.*"

In the present case the Legislature has not provided that any service be made of a distress warrant except the seizure of the property against which the lien is declared to exist, and no personal judgment results. Virtually, the landlord takes the possession of the property in which he has an interest from the possession of the tenant, in pursuance of the contract of leasing, which contract embraces a consent that the possession may be so taken in default of payment. The Legislature has thus enacted that the service of the warrant by seizure of the property is a sufficient notice to the tenant that the lien is to be enforced according to the contract. The warrant is process of law with reference to this contract.

But it is objected that the property is about to be condemned without a trial by a jury, and that the Constitution declares that " the right of trial by jury shall be secured to all and remain inviolate forever." That the *right* of trial by jury " shall remain inviolate," means that the right shall, in all cases in which it was enjoyed when the Constitution was adopted, remain unabridged by any act of legislation. Flint R. S. Co. vs. Roberts, 2 Fla., 102, 114. The clause does not *confer* upon every party in all classes of

cases a right of trial by jury. It does not extend the right to cases ordinarily cognizable in courts of equity, or for the enforcement of liens, or cases of distress for rent, where the right of trial by jury did not before exist.

An act of Assembly of Maryland incorporating the Bank of Columbia provided that when any person gave a note negotiable at the bank, and neglected to pay it for ten days after demand in writing, the president might write to the Clerk of the General Court, sending to him the note, with evidence of the demand, and order the clerk to issue a *fieri facias* or attachment by way of execution, on which the debt and costs might be levied by selling the property of the defendant, the amount due to be sworn to by the president of the bank before execution issued. In case the defendant disputed the whole or any part of the debt, on the return of the execution the court should order an issue to be tried, and make such order that justice might be speedily done. The case of the Bank of Columbia vs. Okeley, 4 Wheaton, 235, arose under this act, and in the opinion of the court, it is said : " Was this act void as the law of Maryland ? If it was, it must have become so under the restrictions of the Constitution of the State or of the United States. What was the object of those restrictions? It could not have been to protect the citizen from his own acts, for it would then have operated as a restraint upon his rights. It must have been against the acts of others. But to constitute particular tribunals for the adjustment of controversies among them, to submit themselves to the exercise of summary remedies, or to temporary privation of rights of the deepest interest, are among the common incidents of life. Such are submissions to arbitration ; such are stipulation bonds, forthcoming bonds, and contracts of service. And it was with a view to the voluntary acquiescence of the individual, nay, the solicited submission to the

law of the contract, that this remedy was given. By making the note negotiable at the Bank of Columbia, the debtor chose his own jurisdiction; in consideration of the credit given him he voluntarily relinquished his claims to the ordinary administration of justice, and placed himself only in the situation of an hypothecator of goods, with power to sell on default, or a stipulator in the admiralty, whose voluntary submission to the jurisdiction of the court subjects him to personal coercion. * * * * And if the defendant does not avail himself of the right given him, of having an issue made up, and the trial by jury, which is tendered him by the act, it is presumable that he cannot dispute the justice of the claim. That this view of the subject is giving full effect to the seventh amendment of the Constitution, is not only deducible from the general intent, but from the express wording of the article referred to. * * * * With this explanation there is nothing left to this individual to complain of. What he has lost he has voluntarily relinquished, and the trial by jury is open to him, either to arrest the progress of the law in the first instance, or to obtain redress for oppression, if the power of the bank has been abused." The execution was sustained.

The provisions of the charter of the Bank of Columbia and the circumstances of that case were so like the law and facts of the present, it would seem that the foregoing opinion is decisive of the present question. The act relating to the remedy by distress for rent and supplies gives the tenant the right of trial by jury if he chooses to avail himself of it by complying with the prescribed method.

" We cannot think the trial by jury substantially defeated by these conditions, though the defendant may, and at times probably will, be subjected to some inconvenience in complying. These terms may be onerous, but this is purely a question of expediency, and one which must from its very

nature address itself exclusively to the law maker. And it is difficult to prescribe limits to the power of the Legislature in this respect. There is no invasion or infringement of the Constitution, so long as trial by jury is not directly or indirectly abolished." 5 Ga., 194; Vanzant vs. Waddell, 2 Yerger, 260; Donald vs. Schell, 6 S. & R., 240.

The forms of administering justice, and the duties and powers of courts as incident to the exercise of a branch of sovereign power, must ever be subject to the legislative will. 4 Wheaton, 235, 443, before cited.

We must hold, therefore, that the provisions of the acts relating to distraining for rent and advances are not in conflict with the Constitution, and that the proceedings of the appellants in this case appear to be conformable to law.

The judgment dismissing the warrant and proceedings is reversed, and the cause remanded with directions to proceed therein according to the statute controlling the subject.